UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RMS NA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RMS (AUS) PTY LTD, an Australian limited proprietary company; RMS GLOBAL PTY LTD, an Australian limited proprietary company; P & J BUTTIGIEG NOMINEES PTY LTD, an Australian limited proprietary company; PETER ANTHONY BUTTIGIEG, an individual; JENNIFER LYNN BUTTIGIEG, an individual; ASCOTT 2 PTE LTD, an Australian limited proprietary company; ADVENT PARTNERS 3 FUND LP, an Australian limited proprietary company; and DOES 1–100<br><br>Defendants. | Case No.: 24-cv-01366-AJB-MMP<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTIONS TO DISMISS; and**<br><br>**(2) DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**(Doc. Nos. 22, 23, 43)** |

Presently pending before the Court are Defendants RMS Global Pty Ltd ("RMS Global"), P & J Buttigieg Nominees Pty Ltd ("P&J"), Peter Buttigieg, Jennifer Buttigieg, Ascott 2 Pte Ltd ("Ascott"), and Advent Partners 3 Fund LP's ("Advent") (collectively, the "Affiliate Defendants") motion to dismiss (Doc. No. 22), RMS (Aus) Pty Ltd's ("RMS

Australia") motion to dismiss (Doc. No. 23) (all Defendants collectively, "Defendants"), and Plaintiff RMS NA, Inc.'s motion for preliminary injunction (Doc. No. 43). For the reasons provided in detail below, the Court **GRANTS** Defendants' motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and **DENIES AS MOOT** Plaintiff's motion for preliminary injunction.

## I.    BACKGROUND

RMS Australia is an Australian company that develops and produces software ("RMS Software") for use in the hospitality industry for various types of booking services. (Complaint ("Compl."), Doc. No. 1, ¶ 18.) Plaintiff is a Delaware corporation formed by Reza Paydar for the purposes of the joint operation of RMS NORTH AMERICA LLC (the "Joint Venture"), with its principal place of business in San Diego County, California. (*Id.* ¶¶ 9, 19.)

On March 31, 2011, Plaintiff and RMS Australia entered into a Second Amended and Restated Limited Liability Company Agreement (the "Operating Agreement") for the Joint Venture. (*Id.* ¶¶ 9, 20.) The express goal for establishing the Joint Venture was for marketing and distributing the RMS Software in North America. (*Id.* ¶ 20; Operating Agreement, Doc. No. 1-2, at 6 (Recitals § F).) The Operating Agreement is governed by Delaware law. (Operating Agreement § 15.5.)

At some point, Defendants Mr. Buttigieg, Ms. Buttigieg, and P&J (collectively, the "Buttigieg Defendants") restructured RMS Global as the sole member of RMS Australia. (Compl. ¶ 36.) Then, without informing Plaintiff, Buttigieg Defendants sold more than a combined controlling share of their interest in RMS Global to Defendants Ascott and Advent. (*Id.* ¶ 37.)

Plaintiff states it consistently met its obligations under the Operating Agreement and its amendments, including by successfully marketing and selling the RMS Software to clients in the American markets. (*Id.* ¶ 40.) Plaintiff asserts, however, that RMS Australia, through the direction and control of Defendants, consistently failed in its obligations, which interfered with Plaintiff's ability to procure additional clients. (*Id.* ¶ 41.) Specifically,

Plaintiff asserts RMS Australia failed to provide customization services, resulting in the loss of multiple existing and prospective clients; adequate quality assurance and customer support and training, resulting in further loss of clients and an erosion of the Joint Venture's goodwill; and adequate training to Joint Venture staff and clients, instead directing them to watch videos on YouTube in lieu of working with them individually. (*Id.*) Further, despite the express goal to make the Joint Venture locally autonomous, Plaintiff alleges RMS Australia never established, or attempted to develop, locally autonomous engineering or quality assurance teams for the Joint Venture. (*Id.* ¶ 43.) Instead, RMS Australia purportedly relied on its own staff, who were "poorly trained and incapable" of conducting the Joint Venture's business. (*Id.* ¶ 44.) RMS Australia also allegedly failed to satisfy multiple capital calls and notices from the Joint Venture and to maintain a positive balance in its capital account. (*Id.* ¶ 48.)

On September 23, 2024, Plaintiff filed an *ex parte* motion for temporary restraining order and a motion for preliminary injunction. (*See* Doc. Nos. 7, 8.) The Court denied the motion for temporary restraining order on October 15, 2024. (*See* Doc. No. 36.) Thereafter, on October 21, 2024, the Court denied Plaintiff's subsequent motion for preliminary injunction with leave to amend. (*See* Doc. No. 40.) The instant motions follow.

## II. LEGAL STANDARD

Under Rule 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the Rule 12(b)(2) motion "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011), *abrogated on other grounds as recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) (citing *Brayton Purcell LLP v. Recordon & Recordon*,

1  606 F.3d 1124, 1127 (9th Cir. 2010), *as amended, abrogated on other grounds as*
2  *recognized by Axiom Foods*, 874 F.3d at 1069–70). While uncontroverted allegations in
3  the complaint are taken as true, the court "cannot 'assume the truth of allegations in a
4  pleading which are contradicted by affidavit.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22
5  F.4th 852, 858 (9th Cir. 2022) (quoting *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557
6  F.2d 1280, 1284 (9th Cir. 1977)). Where both sides submit affidavits, conflicts over the
7  statements contained in affidavits are resolved in the plaintiff's favor. *Id.* (quoting
8  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). "Additionally, any evidentiary
9  materials submitted on the motion 'are construed in the light most favorable to the
10 plaintiff[s] and all doubts are resolved in [their] favor.'" *Ochoa v. J.B. Martin & Sons*
11 *Farms*, 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting *Metro Life Ins. Co. v. Neaves*, 912
12 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

## III. DISCUSSION

Plaintiff bears the burden to show the Court has either general personal jurisdiction or specific personal jurisdiction over Defendants. *Boschetto*, 539 F.3d at 1015.

When there is no applicable federal statute governing personal jurisdiction, as is the case here, the law of the forum state determines personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 800 ("Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."). California's long arm statute, Cal. Code Civ. Proc. § 410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process are the same. *See* Cal. Code Civ. Proc. § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc.*, 647 F.3d at 1223 ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum

"such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "[t]he defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher*, 911 F.2d at 1361 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

### A. General Jurisdiction

Plaintiff's Complaint asserts the Court has personal jurisdiction "over the parties because the parties, through the Joint Venture and their conduct related thereto, had continuous and systemic contacts with California." (Compl. ¶ 16.) Affiliate Defendants and RMS Australia argue Plaintiff does not plead any "continuous and systematic" contacts that would render these defendants "essentially at home" in California. (Doc. No. 22 at 12–13; Doc. No. 23 at 18.)

"For general jurisdiction to exist over a nonresident defendant . . . , the defendant must engage in 'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state." *Schwarzenegger*, 374 F.3d at 801 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), and *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)) (internal citations omitted). A nonresident defendant's "continuous activity of some sorts within a state," however, is not enough by itself to support exercise of general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes," a forum may not exercise general jurisdiction. *Yahoo! Inc.*, 433 F.3d at 1205. Where general jurisdiction exists, the Court has jurisdiction over the defendant for all purposes, even in cases where the claims arise from dealings unrelated to those that establish jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 140 (2014).

Peter and Jennifer Buttigieg are both Australian citizens domiciled in Victoria, Australia. (Compl. ¶¶ 5, 6.) Moreover, RMS Australia, RMS Global, P&J, and Advent are Australian companies with their principal places of business in Victoria, Australia, (*id.* ¶¶ 2–4, 8), and Ascott is a Singaporean company with its principal place of business in Singapore, (*id.* ¶ 7). Thus, Defendants are not "at home" in California. To render Defendants subject to general personal jurisdiction in California, their contacts must be so "continuous and systematic" as to render them "essentially at home" in California. *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919).

Plaintiff asserts that because the Affiliate Defendants "have covertly become owners of RMS Australia (through the shell of RMS Global), which entered into the Operating Agreement here to become a 50% owner of the Joint Venture, which has its principal place of business in San Diego," the Court should find general jurisdiction. (Doc. No. 39 at 14–15.) As to RMS Australia, Plaintiff similarly contends "RMS Australia entered into the Operating Agreement here to become a 50% owner of the Joint Venture, which has its principal place of business in San Diego." (Doc. No. 38 at 15.) Plaintiff further argues the Joint Venture's intent was to market and sell RMS Australia's product throughout North American markets, and that since 2011, RMS Australia has been doing business from San Diego vis-à-vis the Joint Venture. (*Id.* at 15; Doc. No. 39 at 15.) However, Plaintiff's Complaint states only that the parties "had continuous and systemic contacts with California," (Compl. ¶ 16) and makes no other mention of California. Plaintiff's arguments as to Defendants' contacts does not meet the high threshold for general jurisdiction. Thus, the Court does not have general jurisdiction over Defendants.

The Court's analysis proceeds to whether specific jurisdiction is proper.

**B.     Specific Jurisdiction**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "For a State to exercise jurisdiction consistent

with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. In analyzing the relationship between the defendant, the forum, and the particular lawsuit, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State" and that analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284–85.

To exercise specific personal jurisdiction, courts apply a three-prong test. First, the defendant must either purposefully direct its activities or purposefully avail itself of the benefits afforded by the forum's laws. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017). Second, the claim must arise out of or relate to the defendant's forum-related activities. *Id.* Third, the exercise of jurisdiction must be reasonable, such that it comports with fair play and substantial justice. *Id.*

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff meets that burden, 'the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.'" *Axiom Foods*, 874 F.3d at 1068–69 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The Ninth Circuit has emphasized that under the first prong of the specific personal jurisdiction test, purposeful availment and purposeful direction are two distinct concepts. "The exact form of our jurisdictional inquiry depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). For claims sounding in contract, courts generally apply the "purposeful availment" analysis, which considers whether a defendant has purposefully availed themselves of the privilege of conducting business with the forum state. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). For claims sounding in tort, courts apply a "purposeful direction" test, and analyze whether the defendant "has directed his actions at the forum state, even if those actions took place elsewhere." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802–03).

///

### 1. Affiliate Defendants

Affiliate Defendants argue the Court lacks specific personal jurisdiction because Plaintiff fails to plead sufficient facts that its claims against Affiliate Defendants have any substantial connection to its limited presence in California. (Doc. No. 22 at 13–14.) Moreover, Affiliate Defendants contend Plaintiff's allegations are improperly collective, and are purely conclusory. (*Id.* at 14.) Plaintiff responds that the Court has specific jurisdiction over Affiliate Defendants because they: "(1) (though indirectly) contracted with a California entity (Plaintiff); (2) collectively have a 50% ownership of the Joint Venture, which operates primarily in California and is the subject of this lawsuit; and (3) purposely directed their misconduct at Plaintiff and the Joint Venture in California." (Doc. No. 39 at 15.) Plaintiff's Complaint asserts "the individually named Defendants personally directed and engaged in activities toward California that give rise to this Complaint." (Compl. ¶ 16.)

As an initial matter, the parties do not indicate which approach applies to Affiliate Defendants, although in their respective briefs, the Parties appear to apply the purposeful direction analysis. (*See* Doc. No. 22 at 13–15; Doc. No. 39 at 18.) Because Plaintiff's claims against Affiliate Defendants sound in tort,[1] the Court applies the purposeful direction test here.

Next, personal jurisdiction over each defendant must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *Sher*, 911 F.2d at 1365. Plaintiff asserts its allegations are not improperly collective as to Affiliate Defendants, as the Complaint alleges that "all Defendants were knowing players in this fraudulent scheme[.]" (Doc. No. 39 at 18.) Specifically, the Complaint details that Buttigieg Defendants created RMS Global as a first step in the scheme, (Compl. ¶ 36); Buttigieg Defendants then sold more than a combined controlling share of their interest in RMS Global to Ascott and Advent,

---

[1] Plaintiff brings claims against Affiliate Defendants for breach of fiduciary duty, intentional interference with contract, negligent interference with contract, and fraud. (Compl. ¶¶ 65–97.)

8

(*id.* ¶¶ 37–38); all Defendants worked in concert to breach their contractual obligations and engage in fraudulent conduct to cripple Plaintiff's ability to run the Joint Venture independently, (*id.* ¶ 39); Buttigieg Defendants diverted Joint Venture funds to separate business ventures, and the other Defendants knowingly received that benefit, (*id.* ¶ 45); and "Defendants acted in concert to develop a plan" to devalue the Joint Venture to attempt to force Plaintiff to sell its interest to Defendants, (*id.* ¶ 57).

The Court finds the Complaint does not establish specific personal jurisdiction over Defendants Ascott, Advent, and RMS Global. Plaintiff's Complaint merely asserts Ascott and Advent bought a combined controlling share of Buttigieg Defendants' interest in RMS Global, (Compl. ¶ 37), and that, "on information and belief," Ascott and Advent knew that the restructuring of RMS Global and their purchase of their interest was a fraudulent scheme, (*id.* ¶ 38). The remainder of the Complaint collectively refers to "Defendants" and does not separate out Ascott's, Advent's, or RMS Global's actions in the alleged challenged conduct. Thus, the Court **GRANTS** Affiliate Defendants' motion to dismiss for lack of personal jurisdiction over Defendants Ascott, Advent, and RMS Global. *See Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018) (no personal jurisdiction over one defendant as complaint only referenced group defendants together); *Johnson v. LVNV Funding*, No.: 23-cv-00412-WQH-BLM, 2023 WL 3689989, at *3 (S.D. Cal. May 26, 2023) ("However, the Complaint does not establish personal jurisdiction over Defendants Picciano and Falerio because it is completely devoid of any allegations concerning those Defendants' roles in the challenged conduct or their relationships to Defendant LVNV Funding."); *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No.: 19cv1865-GPC(LL), 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) (granting motion to dismiss for lack of personal jurisdiction over two defendants where the "[p]laintiffs do not specifically isolate the jurisdictional facts amongst the different IQVIA entities and improperly lump IQVIA defendants together").

///

///

**Purposeful Direction**

Under the first prong, the Ninth Circuit applies the purposeful direction test enunciated in *Calder* to claims sounding in tort. *Schwarzenegger*, 374 F.3d at 802–03; *Axiom Foods*, 874 F.3d at 1069. Under the three-part *Calder* "effects" test to evaluate purposeful direction, Plaintiff must establish that the defendants allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell*, 606 F.3d at 1128–29).

As to an intentional act, the Court finds Plaintiff sufficiently pleads the remaining Buttigieg Defendants committed intentional acts to engage in a fraudulent scheme.

Next, Affiliate Defendants assert that while Plaintiff claims Affiliate Defendants "directed and engaged in activities toward California," the Complaint does not identify what those activities were, nor does it allege how the activities have any nexus to California. (Doc. No. 22 at 14.) In response, Plaintiff asserts Affiliate Defendants have an ownership interest in RMS Global, a wholly owned subsidiary of RMS Australia, which was used as a shell to transfer RMS Australia's ownership interest in the California-based Joint Venture. (Doc. No. 39 at 17.) Plaintiff asserts Affiliate Defendants' actions were felt by both Plaintiff and the Joint Venture in California, and that Affiliate Defendants' goal was to continue to operate in California. (*Id.* at 17–18.)

To determine whether the defendant expressly aims at the forum state, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Thus, "mere injury to a forum resident is not a sufficient connection to the forum," nor is the defendant's knowledge of plaintiff's "'strong forum connections' . . . combined" with the "foreseeable harm" the plaintiff suffered in the forum. *Id.* at 289–90.
///

1       First, Plaintiff's arguments on express aiming which rest on the "individualized targeting" theory has been called into doubt by *Axiom Foods*. For example, in its opposition, Plaintiff asserts "Defendants necessarily should have known their actions would have been felt by Plaintiff in California." (Doc. No. 39 at 18.) However, by itself, individualized targeting may not support the exercise of specific jurisdiction over a defendant. *See Axiom Foods*, 874 F.3d at 1070–71 ("Following *Walden*, we now hold that while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires.").

This is not to say that allegations of individualized targeting cannot be considered. *Id.* at 1070. It "may remain relevant", but "mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient." *Id.* Here, Buttigieg Defendants' conduct does not connect them to California as required by *Walden*. Buttigieg Defendants' allegedly tortious conduct consists of: Buttigieg Defendants (in Australia) restructuring RMS Global (an Australian company) as a wholly owned subsidiary of RMS Australia (an Australian company); Buttigieg Defendants selling more than a combined controlling share of their interest in RMS Global to Ascott and Advent; and allegedly crippling Plaintiff's ability to run the Joint Venture independently and attempting to force Plaintiff's sale of its interest of the Joint Venture to Defendants. Buttigieg Defendants did all this from their residence and/or principal place of business in Australia, without entering California, contacting any person in California, or otherwise reaching out to California. "In short, none of [Buttigieg Defendants'] challenged conduct had anything to do with [California] itself." *Picot*, 780 F.3d at 1215 (quoting *Walden*, 571 U.S. at 278).

Moreover, Plaintiff relies on pre-*Axiom Foods* authority embracing the Ninth Circuit's individualized targeting test. For example, Plaintiff relies on *Poga Mgmt Partners LLC v. Medfiler*, No: C 12–06087 SBA, 2013 WL 5487343 (N.D. Cal. Sept. 30, 2013), which held the defendant's "acts were expressly aimed at California because, at the time of the acts giving rise to the instant action, [defendant] knew that POGA was a California

limited liability company with an office in San Francisco, California." 2013 WL 5487343, at *6. Moreover, the court found "the effects of this conduct were felt, as [defendant] knew they would be, in California." *Id.* However, *Poga Mgmt Partners* relied both on *Bancroft & Masters*, 223 F.3d 1082, and *Dole Food*, 303 F.3d 1104, which predate *Walden*.

The Court also finds Plaintiff's reliance on *Newman v. Sherman*, No. C05-2989 SBA, 2005 WL 2739299 (N.D. Cal. Oct. 24, 2005), is misplaced. In *Newman*, the court held the plaintiff established personal jurisdiction over the defendant where the defendant admitted the two companies he had an ownership interest in were located in California, "he served as the managing director of the companies, and that he invested a substantial amount of capital into these companies. He also admits that the operations of both companies are governed by California law." 2005 WL 2739299, at *6 (internal citations omitted). Here, however, Plaintiff has not pled that Affiliate Defendants ever transacted any business in California, nor is the Joint Venture governed by California law. Indeed, the Operating Agreement explicitly states that RMS North America is a Delaware corporation and includes a Delaware choice of law provision. (Doc. No. 1-2 at 6, 37.)

Similarly, Plaintiff's reliance on *Global Commodities Trading Group Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101 (9th Cir. 2020), is distinguishable. The Ninth Circuit held the district court had personal jurisdiction over the corporate out-of-state defendant because it "sustained a relationship with Global over several years and hundreds of contracts, purchasing millions of dollars of goods to be shipped from the United States." *Glob. Commodities Trading Grp.*, 972 F.3d at 1108. The court further noted that inspection certificates were issued in California, the defendant made payments on the contracts to Global in California, and the defendant "induced Global to continue doing business with it by acknowledging its ongoing obligations to make payments in California." *Id.* Here, Plaintiff makes no such showing of a sustained relationship or extensive business transactions between itself and Affiliate Defendants in California.

Plaintiff also makes a passing remark that "Defendants took over RMS Australia and directed its operations with the aim of devaluing the Joint Venture." (Doc. No. 39 at 18.)

However, as argued by Affiliate Defendants, Plaintiff does not attempt to address either of the two theories under which a parent/subsidiary relationship could establish jurisdiction. *See Williams*, 851 F.3d at 1021–25. Nor does Plaintiff provide the Court with evidence or even allegations regarding the relationship between Affiliate Defendants. The Complaint does not include allegations regarding the level of control RMS Global has over RMS Australia, only alleging that, "[o]n information and belief, Mr. Buttigieg, Ms. Buttigieg, Ascott, and/or Advent may be held personally liable for the breaches of RMS Australia because they personally (individually or in concert with one another) . . . [acted] on an alter ego or agency basis." (Compl. ¶ 11.)

Plaintiff has not made a prima facie showing of express aiming by Affiliate Defendants. Because Plaintiff "has not established the second prong of [the] purposeful direction test, [express aiming, the Court] need not address the third prong." *Picot*, 780 F.3d at 1215 n.4 (citing *Schwarzenegger*, 374 F.3d at 807 n.1). "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert*, 68 F. Supp. 3d at 1163 (addressing three-part Calder effects test) (citation omitted).

As discussed above, the purposeful direction test is the first prong of the Ninth Circuit's specific jurisdiction test for torts or tort-like claims, and Plaintiff "bears the burden of proving the first two prongs" of the test. *Picot*, 780 F.3d at 1211. Because Plaintiff has not established the first prong of the specific jurisdiction test, the Court need not reach the remaining prongs. *Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."). Plaintiff has not established personal jurisdiction over Affiliate Defendants in California. *Id.*

Accordingly, the Court **GRANTS** Affiliate Defendants' motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2).

///

///

### 2. RMS Australia

Similarly, RMS Australia asserts Plaintiff pleads insufficient facts to establish specific personal jurisdiction over it. (Doc. No. 23 at 18–19.) Specifically, RMS Australia argues Plaintiff's allegation is conclusory, and that there are no facts alleged that would establish that RMS Australia purposefully availed itself of the benefits of conducting business in California. (*Id.* at 19–20.) Plaintiff responds that the Court has specific jurisdiction over RMS Australia because RMS Australia (1) contracted with a California entity; and (2) is a 50% owner of the Joint Venture, which operates its principal place of business in California. (Doc. No. 38 at 16.) However, as noted by RMS Australia, Plaintiff's allegations in its Opposition are not stated in the Complaint. (Doc. No. 42 at 6–7.)

As with Affiliate Defendants, the parties do not indicate which approach applies to RMS Australia. However, in their respective briefs, the Parties appear to apply both the purposeful direction and purposeful availment analyses. (*See* Doc. No. 23 at 19–20; Doc. No. 38 at 17.) Because Plaintiff's claims against RMS Australia sound in both contract and tort, the Court proceeds to analyze the first prong of the specific jurisdiction test under both approaches.

### **Purposeful Availment and Purposeful Direction**

In determining whether a defendant purposefully availed themselves of the forum, there must be "actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King*, 471 U.S. at 475 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). The defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362 (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). "Merely 'random, fortuitous, or attenuated' contacts are not sufficient." *Picot*, 780 F.3d at 1212 (quoting *Burger King*, 471 U.S. at 475).

The Supreme Court has "emphasized that courts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the

claim, when assessing whether a defendant has minimum contacts with a forum." *Glob. Commodities Trading Grp.*, 972 F.3d at 1108. "In cases where we have held that a contract between a forum resident and a non-resident did not give rise to specific jurisdiction in the forum, we have done so because the business relationship between the parties was fleeting or its center of gravity lay elsewhere." *Id.*

Here, the Court concludes it lacks specific jurisdiction over RMS Australia for the claims alleged in the Complaint. Plaintiff's Opposition as to RMS Australia's Motion to Dismiss mirrors its Opposition to Affiliate Defendants' Motion to Dismiss, and the Court finds Plaintiff's reliance on *Poga Mgmt Partners*, *Newman*, and *Global Commodities Trading Group* fail for the same reasons. (*Compare* Doc. No. 38 at 17, *with* Doc. No. 39 at 16–17.) As discussed above, the Complaint alleges "the individually named Defendants personally directed and engaged in activities toward California that give rise to this Complaint." The Complaint further states "Plaintiff and RMS Australia entered into the Operating Agreement for the Joint Venture, with the express goal of marketing and distributing the RMS Software in North America" but does not mention any affirmative conduct or transaction in California. Indeed, the Complaint is devoid of any facts that the Joint Venture has any operations in California or that RMS Australia "reach[ed] out beyond [Australia]" to "create continuing relationships and obligations with citizens of [California]." *Burger King*, 471 U.S. at 473. The fact that Plaintiff and the Joint Venture have their principal place of business in California does not alone support the exercise of specific jurisdiction over RMS Australia. *See Nazos v. Toyota Motor Corp.*, No. CV 22-2214 PA (Ex), 2023 WL 4240184, at *6 (C.D. Cal. Mar. 3, 2023).

Accordingly, the Court **GRANTS** RMS Australia's motion to dismiss based on lack of personal jurisdiction.

///
///
///
///

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss under Rule 12(b)(2) **WITH LEAVE TO AMEND**. Plaintiff's motion for preliminary injunction is thus **DENIED AS MOOT**. Should Plaintiff choose to do so, it may file an Amended Complaint by **December 2, 2024**. Defendants must file a responsive pleading no later than **December 16, 2024**.

**IT IS SO ORDERED.**

Dated: November 20, 2024

Hon. Anthony J. Battaglia
United States District Judge