1
2
3
4
5
6
7

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11    RMS NA, INC.,<br><br>12                    Plaintiff,<br><br>13    v.<br><br>14    RMS (AUS) PTY LTD, an Australian limited proprietary company; RMS<br>15    GLOBAL PTY LTD, an Australian limited proprietary company; P & J<br>16    BUTTIGIEG NOMINEES PTY LTD, an Australian limited proprietary company;<br>17    PETER ANTHONY BUTTIGIEG, an individual; JENNIFER LYNN<br>18    BUTTIGIEG, an individual; ASCOTT 2<br>19    PTE LTD, an Australian limited proprietary company; ADVENT<br>20    PARTNERS 3 FUND LP, an Australian<br>21    limited proprietary company; and DOES<br>22    1–100<br>23                    Defendants. | Case No.:  24-cv-01366-AJB-MMP<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTIONS TO DISMISS; and**<br><br>**(2) DENYING AS MOOT PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**(Doc. Nos. 50, 51, 53)** |

24
25
26
27
28

Presently pending before the Court are Defendants RMS Global Pty Ltd ("RMS Global"), P & J Buttigieg Nominees Pty Ltd ("P&J"), Peter Buttigieg, Jennifer Buttigieg, Ascott 2 Pte Ltd ("Ascott"), and Advent Partners 3 Fund LP's ("Advent") (collectively, the "Affiliate Defendants"), and RMS (Aus) Pty Ltd's ("RMS Australia") (all Defendants

1

collectively, "Defendants") motions to dismiss the First Amended Complaint ("FAC") (Doc. Nos. 50, 51), and Plaintiff RMS NA, Inc.'s renewed motion for preliminary injunction (Doc. No. 53). For the reasons provided in detail below, the Court **GRANTS** Defendants' motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and **DENIES AS MOOT** Plaintiff's motion for preliminary injunction.

## I.    BACKGROUND[1]

RMS Australia is an Australian company formed by Mr. Buttigieg and Ms. Buttigieg that develops and produces software ("RMS Software") for use in the hospitality industry for various types of booking services. (FAC, Doc. No. 49, ¶¶ 2, 26.) Plaintiff is a Delaware corporation formed by Reza Paydar for the purposes of the joint operation of RMS NORTH AMERICA LLC (the "Joint Venture"), with its principal place of business in San Diego County, California. (*Id.* ¶¶ 1, 9, 27.)

On March 31, 2011, Plaintiff and RMS Australia entered into a Second Amended and Restated Limited Liability Company Agreement (the "Operating Agreement") for the Joint Venture. (*Id.* ¶¶ 9, 28.) The express goal for establishing the Joint Venture was for marketing and distributing the RMS Software in North and South America. (*Id.* ¶ 28; Operating Agreement, Doc. No. 49 at 28–89, at <u>Recitals</u> § F.) The Operating Agreement is governed by Delaware law. (Operating Agreement § 15.5.)

Plaintiff asserts RMS Australia, through the direction and control of Defendants, consistently failed in its obligations. (FAC ¶ 51.) Eventually, Mr. Buttigieg sent Mr. Paydar a Purchase Offer for P & J Buttigieg OS Investments Pty Ltd, another of Mr. Buttigieg's companies, to purchase the Joint Venture's Company Property from Plaintiff and RMS Australia. (*Id.* ¶ 58.) When Plaintiff did not respond, Mr. Buttigieg stated an Impasse had occurred under the Operating Agreement and invoked the Operating Agreement's Put-Call

---

[1] The facts of this case have been recounted at length in previous orders and will not be repeated here except as necessary to explain the Court's ruling.

provisions. (*Id.* ¶¶ 61, 72.) Thereafter, Defendants tendered their purchase price and "shuttered the Joint Venture . . . ." (*Id.* ¶ 77.)

## II.    LEGAL STANDARD

Under Rule 12(b)(2), a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the Rule 12(b)(2) motion "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011), *abrogated on other grounds as recognized by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010), *as amended, abrogated on other grounds as recognized by Axiom Foods*, 874 F.3d at 1069–70). While uncontroverted allegations in the complaint are taken as true, the court "cannot 'assume the truth of allegations in a pleading which are contradicted by affidavit.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)). Where both sides submit affidavits, conflicts over the statements contained in affidavits are resolved in the plaintiff's favor. *Id.* (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)). "Additionally, any evidentiary materials submitted on the motion 'are construed in the light most favorable to the plaintiff[s] and all doubts are resolved in [their] favor.'" *Ochoa v. J.B. Martin & Sons Farms*, 287 F.3d 1182, 1187 (9th Cir. 2002) (quoting *Metro Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990)).

## III.    DISCUSSION

Plaintiff bears the burden to show the Court has either general personal jurisdiction or specific personal jurisdiction over Defendants. *Boschetto*, 539 F.3d at 1015.

3

When there is no applicable federal statute governing personal jurisdiction, as is the case here, the law of the forum state determines personal jurisdiction. *See Schwarzenegger*, 374 F.3d at 800. California's long arm statute is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process are the same. *See* Cal. Code Civ. Proc. § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo*, 647 F.3d at 1223 ("California's long-arm statute . . . is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "[t]he defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher*, 911 F.2d at 1361 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

## A.     Whether the Court Has Personal Jurisdiction Over Defendants

### 1.     Waiver of Jurisdictional Challenge

As an initial matter, Plaintiff asserts Defendants have waived a jurisdictional challenge because they did not challenge jurisdiction on September 24, 2024, when all Defendants generally appeared regarding a stipulation to extend their time to respond to Plaintiff's Ex Parte Application for a Temporary Restraining Order, nor on October 9, 2024, when they appeared vis-à-vis filing an Opposition to Plaintiff's Motion for Preliminary Injunction. (Doc. No. 61 at 16; Doc. No. 62 at 17.)

Defendants respond that they did not waive their personal jurisdiction defense for two reasons. First, Plaintiff never raised this argument when it opposed the motion to dismiss the original complaint, in which Defendants asserted their personal jurisdiction

4

defense, and therefore waived it. (Doc. No. 63 at 7 (citing *Leonard v. Peters*, No. 21-35471, 2023 WL 387035, at *2 (9th Cir. Jan. 10, 2023)); Doc. No. 64 at 6.) Second, Defendants assert Plaintiff is also wrong on the law because a defendant must "manifest a clear purpose" to defend the suit solely on its merits through "protracted litigation" in order to waive a personal jurisdiction defense before a Rule 12 motion is due. (Doc. No. 63 at 7 (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), and *Knecht v. Lanphere Enters. Inc.*, No. 3:19-cv-01991-AC, 2020 WL 4910561, at *3 (D. Or. July 30, 2020)).)

"A party who fails to assert a waiver argument forfeits—and therefore implicitly waives—that argument." *United States v. Scott*, 705 F.3d 410, 415 (9th Cir. 2012). In the instant case, Plaintiff failed to raise its waiver argument in opposition to Defendants' initial Rule 12 motions, when Defendants first raised the issue of personal jurisdiction. (*See generally* Doc. Nos. 38, 39.) Moreover, in the Ninth Circuit, a party generally only waives the personal jurisdiction defense if they fail to raise it at the Rule 12 stage when it was available. *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) (citing Fed. R. Civ. P. 12(h)(1)(A), (g)(2)). Because Defendants duly raised the defense in their first Rule 12 motions, (*see* Doc. Nos. 22, 23), they have not waived the defense under the Federal Rules of Civil Procedure.

### 2. General Jurisdiction

Plaintiff's FAC asserts the Court has personal jurisdiction "over the parties because the parties, through the Joint Venture and their conduct related thereto, had continuous and systemic contacts with California." (FAC ¶ 16.) Affiliate Defendants and RMS Australia argue Plaintiff does not plead any "continuous and systematic" contacts that would render these defendants "essentially at home" in California. (Doc. No. 50-2 at 12–14; Doc. No. 51-2 at 14–16.)

To exercise general jurisdiction over a corporate entity, its contacts with the forum must "render [the corporate entity] essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (internal quotation marks and alterations omitted). The "paradigm" forum for the exercise of general jurisdiction over a corporate entity is its place

of incorporation and its principal place of business, but a corporate entity may be subject to general jurisdiction elsewhere in "exceptional case[s]" where a "corporation's operations in a forum . . . [are] so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. The Supreme Court has held that the exercise of general jurisdiction over a corporation is appropriate under the "exceptional case[s]" rationale where, for example, the forum state had served as the corporation's temporary principal place of business. *See id.* (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) as an example of an exceptional case warranting the exercise of general jurisdiction); *see also Perkins*, 342 U.S. at 448 (holding that Ohio courts could exercise general jurisdiction over a corporation incorporated in the Philippines because Ohio had become "the corporation's principal, if temporary, place of business" during World War II, as the corporation's president had moved to Ohio, he kept an office in Ohio, maintained the company's files in Ohio, and oversaw the company's activities in Ohio). Namely, in the Ninth Circuit, courts consider the non-resident corporation's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Mavrix*, 647 F.3d at 1224 (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006) (internal quotation marks omitted)).

Peter and Jennifer Buttigieg are both Australian citizens domiciled in Victoria, Australia. (FAC ¶¶ 5, 6.) Moreover, RMS Global, P&J, and Advent are Australian companies with their principal places of business in Victoria, Australia, (*id.* ¶¶ 3–4, 8), and Ascott is a Singaporean company with its principal place of business in Singapore, (*id.* ¶ 7). RMS Australia is an Australian company with its principal place of business in Victoria, Australia. (*Id.* ¶ 2.) To render Defendants subject to general personal jurisdiction in California, their contacts must be so "continuous and systematic" as to render them "essentially at home" in California. *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

///

6

### a.     RMS Australia

Plaintiff argues this Court can exercise general jurisdiction over RMS Australia because RMS Australia's "contacts with California are significant" and it is registered to do business in California. (Doc. No. 62 at 18.)

As noted above, *Daimler* left open "the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." 571 U.S. at 139 n.19. However, "'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (quoting *Daimler*, 571 U.S. at 137).

While Plaintiff's reliance on RMS Australia's registration with the California Secretary of State to conduct business in California is relevant to the personal jurisdiction inquiry, the Ninth Circuit has made clear that "California does not require corporations to consent to general personal jurisdiction in that state when they designate an agent for service of process or register to do business." *AM Trust v. UBS AG*, 681 Fed. App'x. 587, 588–89 (9th Cir. 2017); *Wagner v. Terumo Med. Corp.*, No.: 18cv1007-MMA (MSB), 2018 WL 6075951, at *5 (S.D. Cal. Nov. 21, 2018); *see, e.g.*, *Hamra v. Transamerica Life Ins. Co.*, No. 2:18-cv-06262-CAS(GJSx), 2018 WL 6443085, at *2 (C.D. Cal. Oct. 5, 2018).

Moreover, Plaintiff's arguments regarding RMS Australia's operations in California are unpersuasive. The Supreme Court has held even where a corporation's in-state activities are in a sense "continuous and systematic," a court may not have general personal jurisdiction over the corporation. *Daimler*, 571 U.S. at 138–39. The test is whether "a corporation's affiliations with the State are so continuous and systematic as to render [it] *essentially at home* in the forum state." *Id.* (internal citations and quotation omitted) (emphasis added). Indeed, "even if Plaintiff could show that [the defendant] conducted regular business in California, that fact would still be insufficient to render it 'at home' in

7

the state." *Wagner*, 2018 WL 6075951, at *5 (citing *Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.")); *Hamra*, 2018 WL 6443085, at *2 ("General jurisdiction cannot be established over a party on the sole basis that it 'engages in a substantial, continuous, and systematic course of business' in a given state." (quoting *Daimler*, 571 U.S. at 138)).

"If the magnitude of a corporation's business activities in the forum state substantially exceeds the magnitude of the corporation's activities in other places, general jurisdiction may be appropriate in the forum state." *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1137 (S.D. Cal. 2016). Absent such a showing, however, general jurisdiction will be improper. *See, e.g.*, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016) (determining that general jurisdiction over defendant was improper where the number of defendant's employees in the forum represented less than 0.05% of defendant's full workforce and where the amount of gross revenue that defendant derived from operations in the forum never exceeded 0.107% of defendant's total annual revenue); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (finding general jurisdiction lacking where corporation's California contacts were minor compared to its other worldwide contacts).

Here, Plaintiff fails to make the required comparative assessment of RMS Australia's business activities, or proffer facts and evidence sufficient to show that RMS Australia is essentially at home in California. For example, while Plaintiff asserts RMS Australia conducted business in California over fourteen years, employs California citizens, and works with the federal government in California, Plaintiff provides no information regarding the nature and magnitude of RMS Australia's business activities in its other markets. In other words, while Plaintiff demonstrates that California is a forum for RMS Australia's business activities, it fails to assess those contacts in light of RMS Australia's overall business. Without an assessment of RMS Australia's business activities

in their entirety, even continuous and systematic contacts in California will not support a finding of general jurisdiction. *See Lindora*, 198 F. Supp. 3d at 1136–37.

Plaintiff has not demonstrated that RMS Australia has the requisite business contacts in California to meet the high threshold for general jurisdiction.

### b.    Affiliate Defendants

As to Affiliate Defendants, Plaintiff recites many of the same facts as alleged against RMS Australia but, as discussed above, these facts do not meet the high threshold for general jurisdiction. (*See* Doc. No. 61 at 17.) Ascott's ownership of properties in California, without more information, also is insufficient to confer general jurisdiction. As the U.S. Supreme Court explained in *Rush v. Savchuck*, 444 U.S. 320 (1980), "[t]he mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action." *Id.* at 328; *see Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2018 WL 2763308, at *14–18 (N.D. Cal. June 8, 2018) (finding no general jurisdiction based solely on the defendant's purchase of six U.S. properties over the course of six years).

Moreover, Plaintiff attempts to impute RMS Australia's forum contacts to the Affiliate Defendants. (*Id.*) For example, Plaintiff asserts "RMS Global, Mr. Buttigieg, Ms. Buttigieg, Ascott, and/or Advent may be held personally liable for the breaches of RMS Australia because they personally (individually and in concert with one another) organized and directed intentional breaches of the Operating Agreement . . . ." (FAC ¶ 11.) Further, Plaintiff asserts "RMS Global, through the operation and control of Defendants Mr. Buttigieg, Ms. Buttigieg, P&J, Ascott, and Advent, is and controls RMS Australia[,]" (*id.* ¶ 18), and that "Defendants, through the Joint Venture and their conduct related thereto, had continuous and systemic contacts with California[,]" (*id.* ¶ 16). However, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (citing *Doe v.*

9

*Unocal Corp.*, 248 F.3d 915, 925–26 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017)); *see also Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985) (same). To demonstrate the alter ego doctrine applies, a plaintiff "must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice.'" *Unocal Corp.*, 248 F.3d at 926 (quoting *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)).

Indeed, as discussed in the Court's previous Order granting Defendants' Rule 12 motions based on personal jurisdiction, Plaintiff still does not attempt to address either of the two theories under which a parent/subsidiary relationship could establish jurisdiction. (Dismissal Order, Doc. No. 48, at 12–13); *see Williams*, 851 F.3d at 1021–25. Nor does Plaintiff provide the Court with evidence or even allegations regarding the relationship between Affiliate Defendants and RMS Australia. The FAC does not include allegations regarding the level of control Affiliate Defendants has over RMS Australia, only alleging that, "[o]n information and belief, Mr. Buttigieg, Ms. Buttigieg, Ascott, and/or Advent may be held personally liable for the breaches of RMS Australia because they personally (individually or in concert with one another) . . . [acted] on an alter ego or agency basis." (FAC ¶ 11; *see id.* ¶¶ 18, 19, 22, 26.)

Plaintiff has not sufficiently pled facts to confer general jurisdiction over Defendants. Thus, the Court's analysis proceeds to whether specific jurisdiction is proper.

**B.    Specific Jurisdiction**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. In analyzing the relationship between the defendant, the

10

forum, and the particular lawsuit, "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State" and that analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284–85.

To exercise specific personal jurisdiction, courts apply a three-prong test. First, the defendant must either purposefully direct its activities or purposefully avail itself of the benefits afforded by the forum's laws. *Williams*, 851 F.3d at 1023. Second, the claim must arise out of or relate to the defendant's forum-related activities. *Id.* Third, the exercise of jurisdiction must be reasonable, such that it comports with fair play and substantial justice. *Id.*

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff meets that burden, 'the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.'" *Axiom Foods*, 874 F.3d at 1068–69 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

The Ninth Circuit has emphasized that under the first prong of the specific personal jurisdiction test, purposeful availment and purposeful direction are two distinct concepts. "The exact form of our jurisdictional inquiry depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). For claims sounding in contract, courts generally apply the "purposeful availment" analysis, which considers whether a defendant has purposefully availed themselves of the privilege of conducting business with the forum state. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802). For claims sounding in tort, courts apply a "purposeful direction" test and analyze whether the defendant "has directed his actions at the forum state, even if those actions took place elsewhere." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802–03).

///

///

///

11

### 1.    Affiliate Defendants

Because Plaintiff's claims against Affiliate Defendants sound in tort,[2] the Court applies the purposeful direction test here.

Under the three-part *Calder* "effects" test to evaluate purposeful direction, Plaintiff must establish that the defendants allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell*, 606 F.3d at 1128–29).

Here, Plaintiff alleges the Court has personal jurisdiction over each Affiliate Defendant based on their individual and joint contacts with California, or through the actions of RMS Australia. (FAC ¶¶ 16, 18–19, 21–24.) Specifically, Plaintiff asserts Mr. and Ms. Buttigieg, with RMS Australia, organized RMS Global (a wholly owned subsidiary of RMS Australia) in concert with P&J, Ascott, and Advent. (*Id.* ¶ 18.) Mr. Buttigieg, Ms. Buttigieg, P&J, Ascott, and Advent then used RMS Global to control RMS Australia to engage in conduct directed toward California, including allegedly stealing Plaintiff's interest in the Joint Venture. (*Id.*) Affiliate Defendants then created RMS Cloud North America LLC ("RMS Cloud"), a Delaware LLC, which is a subsidiary of either RMS Global or RMS Australia which has its headquarters and principal place of business in San Diego, California. (*Id.* ¶ 19.) Affiliate Defendants then allegedly absconded with the Joint Venture's California-based employees and assets, and represented to clients it would "carry on the business" of the Joint Venture in California. (*Id.*)

Affiliate Defendants argue the Court lacks specific personal jurisdiction because Plaintiff fails to plead sufficient facts that its claims against Affiliate Defendants have any

---

[2] Plaintiff brings claims against Affiliate Defendants for breach of fiduciary duty, intentional interference with contract, negligent interference with contract, and fraud. (FAC ¶¶ 85–117.)

substantial connection to its limited presence in California. (Doc. No. 50-2 at 14–18.) Moreover, Affiliate Defendants contend Plaintiff's allegations are improperly collective and purely conclusory. (*Id.* at 15–16.) Affiliate Defendants also assert Plaintiff does not identify any facts about either Jennifer Buttigieg, P&J, or RMS Global that would connect them to California. (*Id.* at 16.) Plaintiff responds the Court has specific jurisdiction over Affiliate Defendants because they "worked in concert through the conduit of RMS Australia to accomplish the singular goal of" devaluing the Joint Venture and "abscond[ing] with its clients, employees, and assets." (Doc. No. 61 at 20.) Plaintiff also relies on the same facts asserted in its argument for general jurisdiction. (*Id.* at 18 ("For the same reasons discussed above, *a fortiori*, this Court has specific jurisdiction over Defendants.").)

At the outset, personal jurisdiction over each defendant must be assessed individually. *Calder*, 465 U.S. at 790; *Sher*, 911 F.2d at 1365. Plaintiff asserts its allegations are not improperly collective as to Affiliate Defendants, as "Plaintiff has alleged precisely how each of the parties factored in the scheme." (Doc. No. 61 at 20.) However, as to Defendants Jennifer Buttigieg, P&J, and RMS Global, Plaintiff has failed to amend its pleadings to provide any factual allegations specific to these defendants. Rather, Plaintiff asserts Ms. Buttigieg and P&J acted with Mr. Buttigieg and RMS Australia to organize RMS Global and create RMS Cloud to abscond with Plaintiff's assets. (*See* FAC ¶¶ 18, 19, 23.) However, Ms. Buttigieg's employment relationship with Defendants RMS Australia and RMS Global is not sufficient to establish personal jurisdiction over her based on the acts of Defendants RMS Australia and RMS Global. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) ("We do not impute a corporation's forum contacts to each of the corporation's employees."); *In re Boon Glob. Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019) ("[A] corporate officer can be subject to jurisdiction based on his own sufficient individual contacts with the forum."). Moreover, Plaintiff fails to allege any facts as to Ms. Buttigieg, P&J, and RMS Global that connect them to California. Rather, Plaintiff improperly groups these

13

defendants with all Defendants, asserting "Defendants personally directed and engaged in activities in and directed towards California that give rise to this Complaint." (FAC ¶ 16); *see Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No.: 19cv1865-GPC(LL), 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) (granting motion to dismiss for lack of personal jurisdiction over two defendants where the "[p]laintiffs do not specifically isolate the jurisdictional facts amongst the different IQVIA entities and improperly lump IQVIA defendants together"). Accordingly, the Court **GRANTS** the motion to dismiss as to Defendants Jennifer Buttigieg, P&J, and RMS Global.

Affiliate Defendants also contend that Plaintiff fails to plead that any of the Affiliate Defendants interacted with any of the Joint Venture's employees or assets at all, thus failing to establish a parent/subsidiary or alter ego theory of personal jurisdiction. (Doc. No. 50-2 at 15.) In opposition, Plaintiff fails to address this argument. (*See generally* Doc. No. 61.) Even accepting the allegations in the FAC as true, Plaintiff fails to adequately plead an alter ego theory based on Affiliate Defendants' controlling interests in RMS Australia. Rather, Plaintiff asserts that "RMS Global, through the operation and control of Defendants Mr. Buttigieg, Ms. Buttigieg, P&J, Ascott, and Advent, is and controls RMS Australia and engaged in conduct in and directed towards California . . . ." (FAC ¶ 18.) Thus, finding that Plaintiff has not adequately pled alter ego, the Court will not determine whether personal jurisdiction under agency theory exists. *See Ocampo v. United States*, No.: 3:18-cv-01012-JAH-BGS, 2023 WL 6305801, at *6 (S.D. Cal. Sept. 27, 2023) (holding that a "mere recitation of the elements is insufficient to establish an alter ego theory").

Turning to the purposeful direction analysis, the Court finds Plaintiff sufficiently pleads the Affiliate Defendants committed intentional acts to engage in a fraudulent scheme.

Without addressing any of the purposeful direction factors, Plaintiff asserts Ascott owns and operates properties in California, and that Advent has many investors and holdings in California. (FAC ¶¶ 21, 22.) As to this argument, the second prong of the specific personal jurisdiction test requires Plaintiff's claim to be one which "*arises out of*

14

or *relates* to the defendant's forum-related activities." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (emphasis added). The Ninth Circuit has "referred to the second prong of the specific jurisdiction test as a 'but for' test." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990)). Here, Plaintiff fails to show a causal nexus between Ascott's properties and Advent's investors and holdings in the forum and Plaintiff's injury, nor does Plaintiff address this argument in its Opposition. (*See* Doc. No. 61.) The remaining allegations against Ascott and Advent mirror those made against P&J, in that these Defendants are improperly grouped and Plaintiff fails to allege facts showing that Ascott and Advent "directed and engaged in activities toward California."

Finally, as to Defendant Peter Buttigieg, the FAC alleges he "regularly came to California to conduct Joint Venture business, including to attend trade shows, and to meet with clients and employees." (FAC ¶ 23.) However, like the allegations against Advent and Ascott, there is no alleged nexus between any of these business contacts and Plaintiff's claims.

Accordingly, the Court finds Plaintiff has failed to establish personal jurisdiction over Affiliate Defendants and thus **GRANTS** Affiliate Defendants' motion to dismiss Plaintiff's FAC pursuant to Rule 12(b)(2).

### 2.    RMS Australia

RMS Australia asserts Plaintiff fails to plead facts to establish specific jurisdiction over it because the FAC still fails to identify any affirmative conduct or transaction by RMS Australia in California. (Doc. No. 51-2 at 16.)

Because Plaintiff's claims against RMS Australia sound in both contract and tort, the Court proceeds to analyze the specific jurisdiction test under both approaches.

### a.    Purposeful Direction and Purposeful Availment

### i.    Purposeful Direction

As previously discussed, purposeful direction requires that that the defendant: "'(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

15

that the defendant knows is likely to be suffered in the forum state.'" *Axiom Foods*, 874 F.3d at 1069 (quoting *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)). A defendant acts intentionally when he acts with "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020) (quoting *Schwarzenegger*, 374 F.3d at 806). Showing the defendant "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state" is relevant to the "expressly aimed" inquiry. *Axiom Foods*, 874 F.3d at 1069–70.

To determine whether the defendant expressly aims at the forum state, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Express aiming requires that the defendant target the forum state—merely targeting an individual that happens to reside in the forum state will not satisfy the requirement. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017) ("[T]o establish the basis for specific personal jurisdiction, a tort must involve the forum state itself, and not just have some effect on a party who resides there."); *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1099 (S.D. Cal. 2018) ("[T]he 'express aiming' inquiry requires 'something more' than 'a foreign act with foreseeable effects in the forum state.'" (quoting *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000))).

Actions that may demonstrate targeting the forum state include "[t]he solicitation of business in the forum state that results in business being transacted or contract negotiations." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). Similarly, taking actions to exploit the California market for commercial gain may be sufficient to demonstrate targeting. *See Mavrix Photo*, 647 F.3d at 1229–30; *Keeton*, 465 U.S. at 772, 779–81 (publisher was subject to personal jurisdiction in New Hampshire based on its regular circulation of 10,000–15,000 monthly copies of a magazine within the

16

forum, indicating that the publisher "continuously and deliberately" exploited the market). However, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. As the Ninth Circuit explained in *Picot*, the defendant's actions which amounted to interference needed to be aimed at California to demonstrate express aiming. 780 F.3d at 1215. There, the Court noted that because the defendant allegedly interfered with the plaintiff's contractual relationship "from [defendant's] residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California," he did not target the forum. *Id.*

Here, while the parties do not address the purposeful direction factors, their dispute appears to solely concern the second prong of this test, express aiming. Plaintiff asserts the following contacts are sufficient to establish specific jurisdiction: (1) RMS Australia registered with the California Secretary of State to conduct business in California (FAC ¶ 2); (2) it contracted with Plaintiff, a California entity (*id.* ¶ 9); (3) it formed an entity (the Joint Venture) with a principal place of business in San Diego, California; (4) RMS Australia, through the Joint Venture, has conducted significant operations in California for fourteen years (*id.* ¶¶ 9, 16); (5) RMS Australia, through the Joint Venture, employs California citizens (*id.* ¶ 16); (6) RMS Australia, through the Joint Venture, works with the federal government in California (*id.*); (7) it targeted Plaintiff, in San Diego, to steal the Joint Venture from Plaintiff; (8) RMS Australia created a new entity—RMS Cloud (which is not a party to this litigation)—with a principal place of business in San Diego (*id.* ¶ 19); (9) RMS Australia represented to its clients, including those in California, that RMS Cloud would "carry on the business" of the Joint Venture in California (*id.* ¶ 20); and (10) through Mr. Buttigieg, RMS Australia's owner, regularly came to California to conduct Joint Venture business, including to attend trade shows and meet with clients and employees (*id.* ¶ 23). (Doc. No. 62 at 18.)

Without specifically addressing the "expressly aiming" element under the purposeful direction analysis, RMS Australia asserts Plaintiff fails to identify any affirmative conduct or transaction by RMS Australia in California. (Doc. No. 51-2 at 16.)

17

In response, Plaintiff contends specific jurisdiction is proper over a non-resident company where it maintained on-going contractual relations with a resident company. (Doc. No. 62 at 19 (citing *Glob. Commodities*, 972 F.3d at 1110, *Poga Mgmt Partners LLC v. Medfiler*, No: C 12–06087 SBA, 2013 WL 5487343, at *4–6 (N.D. Cal. Sept. 30, 2013), and *Newman v. Sherman*, No. C05-2989 SBA, 2005 WL 2739299, at *6 (N.D. Cal. Oct. 24, 2005)).)

As discussed in the Court's prior Dismissal Order, Plaintiff's arguments which rest on the "individualized targeting" theory "may remain relevant" but "mere satisfaction of the test outlined in *Washington Shoe*, without more, is insufficient. (Dismissal Order at 11); *Axiom Foods*, 874 F.3d at 1070–71. Plaintiff also continues to rely on pre-*Axiom Foods* authority embracing the Ninth Circuit's individualized targeting test, and does not meaningfully argue that any of the conditions for express aiming are met. (*See* Doc. No. 62 at 19–20.)

The facts of the instant case are unlike those in which the express aiming element of purposeful direction have been found. For example, in *RHUB Communications, Inc. v. Karon*, No. 16-cv-06669-BLF, 2017 WL 3382339 (N.D Cal. Aug. 7, 2017), the court held the plaintiff satisfied the "expressly aimed" requirement because the plaintiff alleged the defendant initiated contact with the plaintiff in California, and the defendant traveled to California several times to meet with the plaintiff's employees to discuss terms of their product. *Id.* at *6. The defendant also reviewed the joint venture agreement in California with a member of the plaintiff's board of directors. *Id.* Importantly, the defendant made oral representations while in California that formed the basis of the plaintiff's fraud claim. *Id.* at *7. "Thus, the alleged intentional tort itself occurred in California." *Id.*

Here, Plaintiff's FAC fails to allege that RMS Australia expressly aimed its conduct at California and not generally at Plaintiff. The allegations in the FAC do not support the inference that RMS Australia knew its conduct would interfere with a contract or an economic relation *centered* in California, an inference necessary to establish that RMS Australia had contact with California and not just with Plaintiff. Indeed, Plaintiff states the "express goal" of the Joint Venture was to "market[] and distribut[e] the RMS Software in

18

North America, a previously untapped market (which would later be expanded to include both North and South America)." (FAC ¶ 28.) Plaintiff claims RMS Australia tortiously interfered with the Operating Agreement, but presents no facts that the Operating Agreement was negotiated in California or that any of RMS Australia's tortious actions occurred in California. Moreover, the Operating Agreement contains a choice-of-law provision applying Delaware law to any disputes, indicating the Operating Agreement underlying this dispute is not centered in California. (Operating Agreement § 15.5); *see Verbick v. The Movement Tech. Co., Inc.*, 20-CV-611 TWR (DEB), 2023 WL 11691697, at *4–5 (S.D. Cal. Dec. 13, 2023) (holding the plaintiff failed to satisfy the "express aiming" prong of the purposeful direction test, noting that the parties conducted all negotiation outside of California, with the exception of one meeting, and that the agreement at issue contained a Washington choice-of-law provision).

Thus, based on the foregoing, the Court finds Plaintiff has not sufficiently alleged that RMS Australia "purposefully directed" its activities at California. The Court next considers Plaintiff's contract claims under the "purposeful availment" test.

### ii.    Purposeful Availment

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (internal quotation and citation omitted). When assessing whether a defendant has engaged in such conduct, courts "must evaluate the parties' entire course of dealing," including "prior negotiations and contemplated future consequences, along with the terms of the contract." *See Glob. Commodities*, 972 F.3d at 1108 (internal quotation and citation omitted).

Although Plaintiffs continue to rely on *Global Commodities*, this case is still readily distinguishable on its facts. In *Global Commodities*, the Ninth Circuit held the district court had personal jurisdiction over the corporate out-of-state defendant because it "sustained a relationship with Global over several years and hundreds of contracts, purchasing millions

19

of dollars of goods to be shipped from the United States." *Glob. Commodities*, 972 F.3d at 1108. The court further noted that inspection certificates were issued in California, the defendant made payments on the contracts to Global in California, and the defendant "induced Global to continue doing business with it by acknowledging its ongoing obligations to make payments in California." *Id.* Here, Plaintiff makes no such showing of a sustained relationship or extensive business transactions between itself and RMS Australia in California.

Here, the Court finds Plaintiff has not established that RMS Australia is subject to specific jurisdiction to the extent it relies on purposeful availment. There are no facts to suggest that the Operating Agreement was executed or performed by RMS Australia in California, or that RMS Australia had any obligations under the Operating Agreement in California. Moreover, the Operating Agreement contained a Delaware choice of law clause, (Operating Agreement § 15.5), and it does not appear the Operating Agreement was negotiated in California. In sum, there were no terms in the contracts indicating RMS Australia "contemplated an effect in California, much less that any such effect should be considered a material term of agreement." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817 (9th Cir. 1988).

Accordingly, Plaintiff has failed to establish that RMS Australia is subject to specific jurisdiction in California.

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss under Rule 12(b)(2) **WITH LEAVE TO AMEND**. Plaintiff's motion for preliminary injunction is thus **DENIED AS MOOT**. Should Plaintiff choose to do so, it may file a Second

//

//

//

//

Amended Complaint by **March 11, 2025**. Defendants must file a responsive pleading no later than **March 25, 2025**.

      **IT IS SO ORDERED.**

Dated:  February 24, 2025

Hon. Anthony J. Battaglia
United States District Judge

24-cv-01366-AJB-MMP